**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Allan Block Corporation,

      Plaintiff,

    v.

Shoreline Stone Manufacturing Carib,
Inc., Shoreloc Design Group Inc., Jason
Stell, and Joann Stell,

      Defendants.

_____

Case No. _____

**COMPLAINT**

For its Complaint against Defendants Shoreline Stone Manufacturing Carib, Inc. ("Shoreline"), Shoreloc Design Group Inc. ("Shoreloc"), Jason Stell, and Joann Stell (together, Jason and Joann Stell are referred to herein as the "Stells") (collectively, all Defendants are referred to herein as "Defendants"), Plaintiff Allan Block Corporation ("Plaintiff" or "Allan Block") states and alleges as follows:

## PARTIES

1.    This case involves Defendants' misappropriation and misuse of information and other property to which Allan Block permitted Shoreline access only under specific contractual provisions that limited the uses Shoreline could make of this information and property.

2.    Shoreline did not use Allan Block's confidential information for the only purpose permitted under Shoreline's contract with Allan Block.

3. Instead, Shoreline simply stole the information and then its owners, the Stells, disbanded Shoreline and continued impermissibly using Allan Block's confidential information to compete with Allan Block through their new entity, the reincarnation of Shoreline—Shoreloc.

## PARTIES

4. Allan Block is a corporation incorporated under the laws of the State of Minnesota, with a registered office and principal executive office address of 7424 West 78th Street, Bloomington, Minnesota 55439.

5. Shoreline is an inactive corporation, having dissolved June 30, 2021, that was incorporated under the laws of the State of Florida, with a registered agent and principal address of 7203 121st Terrace North, Largo, Florida 33773. The registered agent of Shoreline is Joann Stell.

6. Shoreloc is a corporation incorporated under the laws of the State of Florida, with a registered agent and principal address of 7203 121st Terrace North, Largo, Florida 33773. The registered agent of Shoreloc is Joann Stell.

7. Jason Stell is an individual who resides in Largo, Florida.

8. Joann Stell is an individual who resides in Largo, Florida.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendants because the suit arises out of or relates to Defendants' contacts with the State of Minnesota.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of the property that is the subject of the action is situated, in this judicial district.

## FACTS

### I. Background.

12. Allan Block is a concrete-construction, i.e., hardscapes, company that was founded in 1986.

13. Since its founding, Allan Block has striven to develop and produce high-quality, cutting-edge products, including a retaining-wall collection.

14. Allan Block's retaining-wall blocks are unique in that they feature a raised lip at the top of each block and a corresponding notch at the bottom.

15. As a result of their unique design, these blocks, stacked without mortar, have far more strength and stability than competing products do.

16. Allan Block makes its products available to customers throughout the United States and internationally.

17. Due to high demand, Allan Block works with a network of concrete-manufacturer companies to produce its product, as well as construction professionals to install it.

18. Shoreline is an entity that was founded in 2014 and voluntarily dissolved in 2021.

19. Shoreline's ostensible purpose was to produce concrete products.

20. But, at least insofar as Shoreline's existence intersected with Allan Block, Shoreline did not perform this function.

21. Instead, Shoreline simply obtained from Allan Block, under contractual provisions restricting its use, confidential information that Shoreline then improperly imparted to the other Defendants so that Defendants, together, could compete against Allan Block using Allan Block's own confidential information.

## II.    July 25–26, 2018: Jason Stell and his son attend an Allan Block training in Minnesota.

22. During the summer of 2018, Jason and Joann Stell approached the President of Allan Block, Tim Bott ("Bott"), to inquire about becoming a producer of Allan Block retaining-wall blocks in Florida.

23. As the Stells and Allan Block discussed a potential contractual, business relationship, Allan Block invited the Stells to travel to Minnesota to receive first-hand training on sales of Allan Block products—through a program Allan Block referred to as "Allan Block University."

24. On or about July 25 and 26, 2018, Jason Stell and his son, Zach Stell, attended a training course in Minnesota that was presented by Allan Block, titled ABU [Allan Block University] Advanced Retaining Walls – for the Commercial Market.

4

25.     The course was designed to increase a salesperson's technical knowledge and help the person to work more efficiently with engineers, specifiers, and large-wall contractors.

26.     Allan Block made the course available to Jason and Zach Stell at no cost to them, and Allan Block even provided transportation and meals to Jason and Zach Stell, as well as several packets of course materials.

### III.     November 9, 2018: Allan Block and Shoreline enter into the Allan Block Corporation Production Agreement.

27.     On or about November 9, 2018, Allan Block and Shoreline entered into the Allan Block Corporation Production Agreement (the "Agreement").

28.     In the Agreement, the parties acknowledged that Allan Block had developed technology and know-how relating to systems and assemblies for mortarless block walls (referred to in the Agreement as the "Blocks") that are described in Exhibit B to the Agreement; and the parties acknowledged that Allan Block had developed technology and know-how relating to molds and equipment used for manufacturing the Blocks (referred to in the Agreement as the "Molds"). (*Id.* § 3.1.)

29.     In the Agreement, the parties also acknowledged that Allan Block had developed intellectual property, including trademarks (referred to in the Agreement as the "Marks"), copyrighted material (referred to in the Agreement as the "Marketing Materials"), material subject to patent applications (referred to in the Agreement as the "Patent Applications"), trade secrets, and other confidential information "relating to

5

design, development, production, engineering, marketing and installation of the Blocks"

(referred to in the Agreement as "Confidential Information"). (*Id.*)

30.     The Agreement defined as the "Technology" the following: "[t]he Blocks, Molds, Marks, Patent Applications, Marketing Materials, Proprietary Information, [Allan Block] Improvements, approved [Shoreline] Improvements, and all other related know-how, trade secrets, processes, designs, technical data, software, websites, and inventions, whether patentable or not." (*Id.*)

31.     The parties each understood and agreed that Allan Block was to "furnish [Shoreline] with one copy of all written Technical Information, in the English language, which [Shoreline] deem[ed] necessary for use in the designs, manufacture, and engineering of the Blocks and Block Assemblies," that Allan Block was to "furnish [Shoreline] with one or more copies of all Business Information which [Shoreline] deem[ed] necessary for use in sale of the Blocks, including training materials and manuals, strategic sales and marketing initiatives, and related internal business documents," and that Shoreline was required to "consider all correspondence and materials exchanged between both parties to be Confidential Information." (*Id.* §§ 8.1–8.3.)

32.     Both parties "agree[d] that all technical, manufacturing, and business information related to the Blocks and other Technology is Confidential Information." (*Id.* § 8.4.)

33.     Shoreline agreed to "take the necessary steps to protect the confidentiality of this [Confidential Information], including limiting the disclosure of such information only to its necessary personnel." (*Id.*)

34.     Shoreline also agreed to "take those commercially reasonable steps necessary to ensure that its employees protect the Confidential Information." (*Id.*)

35.     Shoreline also agreed that it would "keep all Confidential Information confidential and . . . not publish or otherwise disclose such information and . . . not use such information for any purpose other than as provided for in this Agreement." (*Id.*)

36.     These restrictions, placed on Shoreline, with respect to publication, disclosure, or use of Confidential Information were to remain in place unaffected in the event of termination of the Agreement. (*Id.* § 8.5.)

37.     The Agreement conferred on Shoreline only a non-transferable, royalty-bearing license "under the Technology to use and possess the Molds for the limited purpose of manufacturing the Blocks at the Plants [identified in Exhibit D] in the Territories [delineated in Exhibit D], and selling the Blocks under the Marks at a price or prices [Shoreline] . . . deem[ed] appropriate." (*Id.* § 4.1.)

38.     The Agreement made clear that it "constitutes a license and not an assignment of any rights in the Molds, the Marks, or any of the Technology relating to the Blocks, all of which remain the property of [Allan Block]." (*Id.* § 4.2.)

39.     The parties agreed that in the event the Agreement were terminated for any reason, among other requirements, Shoreline would "immediately cease manufacture of the Blocks." (*Id.* § 14.1.)

40.     The parties also agreed that in the event the Agreement were terminated for any reason, Shoreline was "not to sell or provide Molds to any party not authorized by

[Allan Block], or modify the Molds in any way for the purpose of producing other products." (*Id.* § 14.3.)

41.    Additionally, Shoreline represented, warranted, and agreed that "it has no property interest in any of the Technology provided by [Allan Block], and it covenant[ed] that it w[ould] not lease, sell, transfer, grant a security interest in, mortgage, pledge or hypothecate any interest in the Technology provided by [Allan Block]," that Shoreline would "implement all necessary programs and policies and take all actions, including those requested by [Allan Block], to protect the proprietary nature of the Technology," and that Shoreline would "not act in a manner that will disparage the Technology or otherwise detrimentally affect customers' perceptions thereof." (*Id.* §§ 11.2, 11.4.)

42.    Shoreline likewise represented, warranted, and agreed that Shoreline would "not use the Marks on any other product" (not associated with the Blocks). (*Id.* § 11.4.)

43.    Shoreline was not permitted to unilaterally improve or modify the Blocks or Technology:

> [Shoreline] shall promptly notify [Allan Block] of any improvement, betterment, or modification of the Bock or the Technology it may be considering ("Producer's Improvement"). [Allan Block] shall determine if said "Producer's Improvement" is acceptable before allowing [Shoreline] to implement under this License. [Shoreline] may utilize Producer's Improvement only with the prior written consent of [Allan Block] and at [Shoreline's] expense. [Allan Block] shall own the rights to and [Allan Block] may utilize Producer's Improvement without any payment to [Shoreline]. [Shoreline] shall ensure that all of its employees, consultants and third parties who perform any work relating to the Block of other Technology have entered into written agreements assigning [Shoreline] all ownership rights in any Producer Improvements made or developed by such employee, consultant or third party. [Shoreline] shall cooperate with [Allan Block] and sign and deliver any document, or take any act, which [Allan Block] reasonably believes is beneficial in the assignment of rights in Producer

Improvements and the filing and prosecution of patent applications covering any Producer Improvements. [Allan Block] shall, in turn, promptly notify [Shoreline] of any improvements, betterment or modification of the Block and/or the Technology of which [Allan Block] is aware ("Licensure Improvement"). [Shoreline] may utilize Licensor's Improvement at [Shoreline's] expense.

(*Id.* § 10.5)

44. Shoreline agreed "to commence commercial operation and production of Blocks at the Plants within the Territories within six (6) months of the date of this Agreement." (*Id.* § 10.2.)

45. Shoreline was to make available "sufficient resources of space, equipment, material and personnel necessary to meet the sales goals as defined in the annual Sales and Marketing Plan." (*Id.* § 10.1.)

46. Shoreline agreed that "during the term of this Agreement, and for a period of eighteen (18)[] months following the termination of this Agreement, [Shoreline] [would] not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, block wall products in the Territory except with the written consent of [Allan Block]." (*Id.* § 16.)

47. The term of the Agreement was to be three years from November 9, 2018; and the Agreement was to continue in effect after this until terminated. (*Id.* § 5.)

48. Either party, however, could terminate the Agreement at the expiration of the three-year period and any time after this, with or without cause, by giving at least 120 days' prior, written notice to the other party of the intent to terminate. (*Id.*)

49.     The Agreement was also terminable by the non-defaulting party, immediately upon written notice, if an Event of Default occurred. (*Id.* § 12.2.[1])

50.     "Event of Default" is defined by the Agreement as including, *inter alia*, "[a]ny material breach of this Agreement" that "is not cured within fifteen days after receipt of written notification from the non-breaching party." (*Id.* § 13.1.d.)

51.     The Agreement provides that it "shall be interpreted under and governed by the laws of the State of Minnesota of the United States of America." (*Id.* § 18.4.)

52.     Finally, the parties agreed that "[Shoreline] shall pay all of [Allan Block's fees and costs, including attorney's fees, incurred in or related to any legal proceeding relating to [Shoreline's] breach of any provision or obligation of this Production Agreement, or [Shoreline's] infringement or misappropriation of any intellectual property rights of [Allan Block]." (*Id.* § 14.4.)

**IV.     September 2018 – June 2019: Allan Block attempts to assist Shoreline in gets its block-production business off the ground and in performing its obligations under the Agreement.**

53.     As the Stells, even before Shoreline commenced its contractual relationship with Allan Block, demonstrated that they were not experienced in performing the type of work required by the Agreement, Allan Block consistently attempted to assist Shoreline in addressing issues and problems that could otherwise have served as barriers to entry into the block market.

---

[1]     Within the Agreement, § 12.2 follows § 13.1.

54. For example, on or about August 16, 2018, as the parties were moving closer to forming a contractual relationship, Bott sent the Stells a Letter of Understanding, in which Allan Block committed that "[t]o provide Shoreline with an opportunity to put their production plan together," Allan Block would "not extend a production opportunity with Allan Block products to any other company in the market area in proximity to [Shoreline's] plant for the next 30 days."

55. Then, in mid-September 2018, Bott arranged to visit the Stells' plant in Florida to provide input and assistance regarding what would be Shoreline's site and equipment, and to discuss and fashion the scope of what would be the parties' contractual relationship if the parties ultimately decided to enter into one (and they did, as explained above, on or about November 9, 2018).

56. Once the Agreement was reached, Allan Block provided to Shoreline all of the Confidential Information—including the intellectual property described in the Agreement—to Shoreline for Shoreline's use in carrying out its obligations under the Agreement.

57. Among the Confidential Information that Allan Block provided to Shoreline under the Agreement were detailed descriptions and in-depth illustrations and diagrams of the processes that Allan Block had developed for successful production and installation of the Blocks, step-by-step guides for avoiding problems and maximizing the utility and value of the Technology, and proprietary Block-installation methods that Allan Block had refined over time.

58.    The Confidential Information that Allan Block imparted to Shoreline under the Agreement took Allan Block several decades and substantial resources and expense to compile.

59.    On or about December 5 and 6, 2018, Jason and Joann Stell attended a training course in Minnesota that was presented by Allan Block, titled Allan Block University Advanced Retaining Walls For the Commercial Market.

60.    The course included a number of teaching training sessions, presentations, and hands-on workshops.

61.    This training course was particularly significant because, through it, the Stells gained access to additional Allan Block Confidential Information.

62.    In May 2019, Bott made himself available via email to answer questions for the Stells and provide guidance and propose solutions as the Stells continued to struggle with their production and sales processes.

63.    Then, in early June 2019, Bott made arrangements to visit Shoreline's plant in Florida, where he provided advice and assistance regarding production planning and plant configuration.

**V.    June 24, 2019: Allan Block terminates the Agreement for cause.**

64.    Shoreline, however, continued to fail to meet its obligations under the Agreement.

65.    By June 2019, although more than six months had passed since the Agreement was executed, in breach of § 10.2 of the Agreement, Shoreline had not yet

commenced commercial operation and production of Blocks at the Plants within the Territories. (*Id.* § 10.2.)

66.    Still seeking to assist Shoreline rather than terminate the Agreement for cause, however, Allan Block—specifically, Bott—continued to offer help and make suggestions to the Stells.

67.    The help offered by Allan Block, however, was to no avail, as Shoreline continued to fail to meet its obligations under the Agreement.

68.    Shoreline never produced any of what it was required under the Agreement to produce, nor—as a consequence—did Shoreline ever make any royalty payment to Allan Block.

69.    Accordingly, on or about June 24, 2019, Bott, on behalf of Allan Block, emailed the Stells, as representatives of Shoreline, to inform them that because Shoreline had failed to meet its obligations under the Agreement, the parties no longer had an Agreement.

70.    Subsequently, on July 1, 2019, Bott, on behalf of Allan Block, emailed the Stells, as representatives of Shoreline, and confirmed that the Agreement "is terminated."

**VI.    September 6, 2019: Allan Block reminds Jason and Joann Stell of Shoreline's obligations to Allan Block that survived termination of the Agreement.**

71.    On or about September 6, 2019, Bott, on behalf of Allan Block, sent a letter to the Stells, as representatives of Shoreline.

72.    In this September 6, 2019 letter, Bott reiterated that "[o]ur Agreement was terminated for cause in an email to you on June 24th," and Bott restated why: "This only

13

occurred after many attempts over months to provide aid and guidance to move things forward."

73.    Bott next reminded the Stells of Shoreline's obligations that continued notwithstanding the Agreement's termination:

> I understand that your business is yours to run as you see fit, but you also made commitments to Allan Block that I will hold you to. Included in those commitments relate to confidential information in Section 8 of the Agreement and non-competition for eighteen (18) months after termination in Section 16 of the Agreement. With a termination date for cause of June 24th, 2019 please note that I will pursue legal action if you use any of the proprietary information that we provided under the terms of this Agreement as well as if you bring a competitive product to market during this non-complete time.

74.    Bott concluded this September 6, 2019 letter to the Stells by emphasizing that he was "not going to allow anyone to take advantage of the information, details, and the good will we have built over the years."

75.    The Stells did not respond to this September 6, 2019 letter.

76.    According to Shoreloc's website: "In 2020, Joann [Stell] and Jason [Stell] embarked on a new chapter, founding ShoreLoc Design Group. The subsequent year saw them divest Shoreline Stone Manufacturing to concentrate their full attention and resources on ShoreLoc, their latest venture."

77.    On information and belief, the Stells "divest[ed]" Shoreline and "concentrate[d] their full attention and resources" on Shoreloc in an attempt to avoid what the Stells knew were restrictions on disclosure or use of Allan Block's Confidential Information, as well as the restrictions on retention or use of modified versions of Allan Block's retaining-wall-collection Blocks.

14

78.     Shoreline and Shoreloc have the same principal place of business address and mailing address: 7203 121st Terrace North, Largo, Florida 33773.

79.     This address, 7203 121st Terrace North, Largo, Florida 33773, is also the Stells' home address.

80.     The Stells were and remain the only principals of Shoreline and Shoreloc.

81.     Shoreline was dissolved effective June 30, 2021.

82.     Shoreloc's effective date was April 19, 2021.

83.     At the time that Joann Stell filed Articles of Dissolution with the Florida Secretary of State on or about December 17, 2021, on behalf of Shoreline, none of Shoreline's shares had been issued, meaning that Shoreline had never issued shareholder distributions or, if it had, that Shoreline had failed to observe corporate formalities.

84.     Further evidencing Shoreline's failure to observe corporate formalities, Joann Stell described herself as the "OWNER" of the entity in the Articles of Dissolution, yet she held no Shoreline shares.

85.     Accordingly, both Shoreline and Shoreloc are alter egos of the Stells and are also alter egos of one another.

**VII.    December 1, 2022: After Allan Block learns that the Stells have used Allan Block's Technology, disclosed to the Stells, as representatives of Shoreline, under the Agreement, Allan Block sends the Stells a cease-and-desist letter.**

86.     In late November 2022, Allan Block became aware that the Stells, using their entity Shoreloc (which was registered with the Florida Secretary of State on April 19, 2021), had produced knock-offs of Allan Block's retaining-wall collection by using the

Confidential Information (i.e., the technical, manufacturing, and business information related to the Blocks and other Technology) that Allan Block had provided to Shoreline under the Agreement—and that remained subject to the restrictions on disclosure and use set forth in the Agreement.

87.     Accordingly, on or about December 1, 2022, Bott, on behalf of Allan Block, wrote a letter to the Stells, as representatives of Shoreloc, to inform them that Bott had "been forwarded information on [their] knock off of the Allan Block retaining wall collection using the technology [Allan Block] provided to [them]."

88.     Bott next stated to the Stells, as representatives of Shoreloc:

> Although the eighteen-month period for non-compete has expired relative to you bringing some other retaining wall block to market you are prohibited from using the technology we brought to you in developing a product. This includes the use of a core puller and a raised front lip.

89.     Bott added: "You are free to produce someone else's retaining wall block that does not use the specific technology that we provided to you when you signed the Agreement with us."

**VIII.  March 2025: Allan Block learns that the Stells have continued to use Allan Block's Technology, disclosed to the Stells, as representatives of Shoreline, under the Agreement, to make knock-offs of Allan Block's retaining-wall collection.**

90.     In March of 2025, Allan Block again discovered that the Stells, through their entity Shoreloc, were using Allan Block's Confidential Information, including Allan Block's Block Technology, disclosed under and subject to the restrictions of the Agreement, to manufacture knock-offs of Allan Block's retaining-wall-collection Blocks.

16

91. Allan Block also discovered that, on or about July 29, 2024, Joann Stell had emailed a hardscapes company located in Mendota Heights, Minnesota, to solicit this company to become a "ShoreLOC wall block producer" and produce the knock-offs of Allan Block's retaining-wall-collection Blocks that Shoreloc was manufacturing.

92. This email, despite having been sent from Joann Stell's email account, is signed by Jason Stell.

93. Over the ensuing months, the Stells continued attempting to solicit this Minnesota company to partner with Shoreloc in producing the knock-offs of Allan Block's retaining-wall-collection Blocks that Shoreloc was manufacturing.

94. On or about August 15, 2024, Joann Stell posted a video on YouTube that shows Shoreloc's process of producing these knock-offs of the Blocks.

95. Shoreloc's knock-offs of the Blocks include only minor modifications to the Blocks' lip, meaning that Shoreloc's knock-offs of the Blocks retain approximately 90% of the original Block design that Allan Block shared with the Stells, and taught the Stells how to produce and install, under the Agreement.

96. On information and belief, and based on Shoreloc's website, Shoreloc continues to produce and market these knock-offs of the Blocks.

## COUNT I
### Breach of Contract
### (against Shoreline)

97. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

98.    The Agreement is an enforceable contract between Allan Block and Shoreline.

99.    Allan Block performed all conditions precedent to demanding performance by Shoreline of its obligations under the Agreement.

100.    Shoreline materially breached its obligations under the Agreement by, *inter alia*, using Allan Block's Confidential Information for purposes not permitted under the Agreement—including by retaining, after termination of the Agreement, and providing the Confidential Information to the Stells and Shoreloc such that Defendants could produce slightly modified versions of the Blocks for Defendants to use to compete with Allan Block.

101.    By these actions, Shoreline materially breached, at the very least, §§ 4.1, 8.4, 8.5, 10.5, and 14.1 of the Agreement.

102.    As a direct and proximate result of Shoreline's breaches of the Agreement, Allan Block has been harmed and is entitled to compensatory damages, even though the full extent of harm resulting from Shoreline's ongoing breaches cannot be determined, meaning Allan Block does not have an adequate remedy at law.

103.    As a direct and proximate result of Shoreline's breaches of the Agreement, Allan Block has been and continues to be irreparably harmed.

104.    Unless Shoreline and those acting in concert with Shoreline are enjoined from continuing to breach the terms of the Agreement, Allan Block will continue to suffer irreparable harm.

105.    In the alternative, as a direct and proximate result of Shoreline's breach, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

**COUNT II**
**Conversion**
**(against Shoreline)**

106. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

107. Allan Block had, and has, a property interest in its Confidential Information, which includes all technical, manufacturing, and business information related to the Blocks and other Technology.

108. Pursuant to the Agreement, Allan Block shared substantial amounts of its Confidential Information with Shoreline.

109. When the Agreement was terminated, Shoreline was obligated to "protect" and maintain as "confidential," and not disclose or use Allan Block's Confidential Information.

110. Following the Agreement's termination, however, Shoreline retained, used, and disclosed to the Stells and Shoreloc Allan Block's Confidential Information, for the purpose of enabling the Stells and Shoreloc to make and sell knock offs of Allan Block's retaining-wall-collection Blocks.

111. In so doing, Shoreline converted Allan Block's Confidential Information.

112. Additionally, Shoreline permitted slight modifications to be made to Allan Block's retaining-wall-collection Blocks which modified Blocks, per the Agreement, were the property of Allan Block.

113. Although these knock-offs of Allan Block's retaining-wall-collection Blocks were the property of Allan Block, however, Shoreline converted them by using and

permitting its co-Defendants to use, these knock-offs for their own purposes and in competition with Allan Block.

114.    As a direct and proximate result of Shoreline's conversion, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

## COUNT III
### Aiding and Abetting Conversion
### (against the Stells and Shoreloc)

115.    Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

116.    Shoreline converted both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

117.    The Stells, as the only principals of Shoreline, knew that Shoreline converted both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

118.    The Stells knew that, by committing conversion, Shoreline was breaching duties that it owed to Allan Block.

119.    Shoreloc, given that the Stells are the only principals of the company, likewise knew that Shoreline converted both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

120.    Shoreloc knew that, by committing conversion, Shoreline was breaching duties that it owed to Allan Block.

121.    The Stells substantially assisted Shoreline in converting both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection

Blocks because they caused Shoreline to take these actions—and they caused Shoreloc to further the conversion by using the converted property to manufacture knock-offs of Allan Block's retaining-wall-collection that Shoreloc then used—and continues to use—to compete with Allan Block.

122.    Shoreloc substantially assisted Shoreline in converting both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks because it furthered the conversion by using the converted property to manufacture knock-offs of Allan Block's retaining-wall-collection that it then used—and continues to use—to compete with Allan Block.

123.    As a direct and proximate result of Shoreline's conversion, aided and abetted by the Stells and Shoreloc, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

**COUNT IV**
**Civil Theft, Violation of MINN. STAT. § 604.14, subd. 1**
**(against Shoreline)**

124.    Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

125.    Shoreline, without the consent of Allan Block, stole Allan Block's Confidential Information, which was the property of Allan Block.

126.    Shoreline also, without the consent of Allan Block, stole the knock-offs of Allan Block's retaining-wall-collection Blocks, which were the property of Allan Block.

127.    Such acts constitute theft in violation of MINN. STAT. § 604.14, subd. 1.

21

128. As a direct and proximate result of this theft by Shoreline, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

129. Pursuant to MINN. STAT. § 604.14, subd. 1, Shoreline is liable to Allan Block, the owner of the property that Shoreline stole, for the value of the property when stolen plus punitive damages of up to 100% of the property's value.

**COUNT V**
**Aiding and Abetting Civil Theft, Violation of MINN. STAT. § 604.14, subd. 1**
**(against the Stells and Shoreloc)**

130. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

131. Shoreline stole both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

132. The Stells, as the only principals of Shoreline, knew that Shoreline stole both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

133. The Stells knew that, by committing theft, Shoreline was breaching duties that it owed to Allan Block.

134. Shoreloc, given that the Stells are the only principals of the company, likewise knew that Shoreline stole both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

135. Shoreloc knew that, by committing theft, Shoreline was breaching duties that it owed to Allan Block.

22

136.   The Stells substantially assisted Shoreline in stealing both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks because they caused Shoreline to take these actions—and they caused Shoreloc to further the theft by using the stolen property to manufacture knock-offs of Allan Block's retaining-wall-collection that Shoreloc then used—and continues to use—to compete with Allan Block.

137.   Shoreloc substantially assisted Shoreline in stealing both Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks because it furthered the theft by using the converted property to manufacture knock-offs of Allan Block's retaining-wall-collection that it then used—and continues to use—to compete with Allan Block.

138.   As a direct and proximate result of Shoreline's theft, aided and abetted by the Stells and Shoreloc, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

139.   Pursuant to MINN. STAT. § 604.14, subd. 1, the Stells and Shoreloc are liable to Allan Block, the owner of the property that Shoreline, aided and abetted by the Stells and Shoreloc, stole, for the value of the property when stolen plus punitive damages of up to 100% of the property's value.

## COUNT VI
### Receiving Stolen Property, Violation of MINN. STAT. § 609.53, subd. 1
### (against all Defendants)

140.   Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

141. Shoreline and Shoreloc, with the assistance of their principals, the Stells, received, possessed, transferred, or concealed Allan Block's property, including Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks—property that Shoreline, the Stells, and Shoreloc knew belonged to Allan Block and that Shoreline, the Stells, and Shoreloc knew that Shoreline, aided and abetted by the Stells and Shoreloc, had stolen from Allan Block.

142. Such acts constitute receiving stolen property in violation of MINN. STAT. § 609.53, subd. 1.

143. As a direct and proximate result of Defendants' violations of MINN. STAT. § 609.53, subd. 1, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

144. Pursuant to MINN. STAT. § 609.53, subd. 4, Allan Block is entitled to recover three times the amount of damages that it actually suffered as a result of Defendants' violations of MINN. STAT. § 609.53, subd. 1.

145. Pursuant to MINN. STAT. § 609.53, subd. 4, Allan Block is entitled to recover from Defendants the costs of suit and Allan Block's reasonable attorneys' fees.

### COUNT VII
### Civil Conspiracy
### (against all Defendants)

146. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

147. The Stells, Shoreline, and Shoreloc worked together, i.e., conspired, to accomplish conversion, theft, and receipt of stolen property when they improperly retained,

improperly took, improperly received, misappropriated, and misused Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks.

148. As a direct and proximate result of Defendants' conspiracy, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

## COUNT VIII
### Unjust Enrichment
### (against all Defendants)

149. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

150. Defendants improperly retained, improperly took, improperly received, misappropriated, and misused Allan Block's Confidential Information and the knock-offs of Allan Block's retaining-wall-collection Blocks—valuable property of Allan Block that Defendants have no right to retain or use.

151. By their misconduct, Defendants have been unjustly enriched to the detriment of Allan Block.

152. Defendants should be required to disgorge any and all profits, and any other benefits, that Defendants have obtained by their misconduct.

## COUNT IX
### Unfair Competition
### (against all Defendants)

153. Allan Block incorporates by reference each of the foregoing paragraphs as though each such paragraph is set forth fully herein.

154.    Defendants are engaged in a new business, Shoreloc, that competes with Allan Block's business.

155.    Defendants' business, however, is based upon the unauthorized disclosure and use of Allan Block's Confidential Information, which all Defendants knew (and know) Shoreline had (and has) a duty to "protect" and maintain as "confidential," and not disclose or use; and Defendants' business is also based upon the unauthorized use of slightly modified versions of Allan Block's retaining-wall-collection Blocks, which are the property of Allan Block.

156.    Defendants' acts constitute unfair competition and must be enjoined.

157.    As a direct and proximate result of Defendants' unfair competition, Allan Block has been harmed and is entitled to compensatory damages of at least $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Allan Block respectfully requests that the Court enter judgment:

1.      Finding Shoreline liable on Counts I, II, IV, VI, VII, VIII, and IX of the Complaint;

2.      Finding the Stells liable on Counts III, V, VI, VII, VIII, and IX of the Complaint;

3.      Finding Shoreloc liable on Counts III, V, VI, VII, VIII, and IX of the Complaint;

4.      Enjoining Shoreline, and those acting in concert with Shoreline, from continuing to breach the terms of the Agreement;

5. Awarding Allan Block its actual and compensatory damages of at least $75,000;

6. Awarding Allan Block exemplary and punitive damages for the misconduct of each Defendant;

7. Awarding Allan Block, for the property of Allan Block that Shoreline, aided and abetted by the Stells and Shoreloc, stole, the value of the property when stolen plus punitive damages of up to 100% of the property's value, pursuant to MINN. STAT. § 604.14, subd. 1;

8. Awarding Allan Block, for the property of Allan Block that Defendants received, possessed, transferred, or concealed, knowing the same to have been stolen, three times the amount of damages that Allan Block actually suffered as a result of Defendants' violations of MINN. STAT. § 609.53, subd. 1, pursuant to MINN. STAT. § 609.53, subd. 4;

9. Awarding Allan Block its reasonable attorneys' fees and costs incurred in this action; and

10. Awarding Allan Block such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to FED. R. CIV. P. 38, Allan Block hereby demands a trial by jury on all claims so triable.

27

**THOM ELLINGSON, PLLP**

Date: April 30, 2025

*/s/ Aaron R. Thom*

Aaron R. Thom (#0392646)
Samantha J. Ellingson (#0397448)
athom@thomellingson.com
sellingson@thomellingson.com
45 South 7th Street, Suite 2610
Minneapolis, MN 55402
Phone: (612) 286-0505
Fax: (612) 601-8955

***Attorneys for Plaintiff Allan Block Corporation***